UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| IN RE: | CHAPTER 11 |
|---|---|
| HC INNOVATIONS, INC., | CASE NO. 10-50355 |
| ENHANCED CARE INITIATIVES, INC., | CASE NO. 10-50356 |
| ENHANCED CARE INITIATIVES OF TENNESSEE, INC., | CASE NO. 10-50357 |
| HM STRATEGIES, INC., | CASE NO. 10-50358 |
| ENHANCED CARE INITIATIVES OF ALABAMA, INC. | CASE NO. 10-50359 |
| ENHANCED CARE INITIATIVES OF MASSACHUSETTS, INC. | CASE NO. 10-50360 |
| ENHANCED CARE INITIATIVES OF NEW YORK, INC., | CASE NO. 10-50361 |
| TEXAS ENHANCED CARE INITIATIVES, INC. | CASE NO. 10-50362 |
| Debtors | |

**DEBTORS' MOTION FOR USE OF CASH COLLATERAL
ON PRELIMINARY AND FINAL BASIS**

TO THE HONORABLE ALAN H. W. SHIFF, UNITED STATES BANKRUPTCY JUDGE:

HC Innovations, Inc. ("HC"), Enhanced Care Initiatives, Inc. ("ECI"), Enhanced Care Initiatives of Tennessee, Inc. ("ECI Tennessee"), Texas Enhanced Care Initiatives, Inc. ("ECI Texas"), Enhanced Care Initiatives of Massachusetts, Inc. ("ECI Massachusetts"), Enhanced Care Initiatives of New York, Inc. ("ECI New York"), Enhanced Care Initiatives of Alabama, Inc. ("ECI Alabama"), and HM Strategies, Inc. ("HM"), as debtors and debtors-in-possession (HC, ECI, ECI Tennessee, ECI Texas, ECI Massachusetts, ECI New York, ECI Alabama and HM collectively referred to as "Debtors"), by and through their proposed counsel, Reid and Riege, P.C., hereby submit this Motion for Use of Cash Collateral on Preliminary and Final Basis ("Motion") and, in support thereof, respectfully represent as follows:

-1-

1.      On February 19, 2010 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the District of Connecticut, Bridgeport Division. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.      The Debtors are engaged in the business of arranging for and providing health care services and technology products in the United States. HC is the parent corporation of ECI. ECI, in turn, is the parent corporation of ECI Tennessee, ECI Texas, ECI Massachusetts, ECI New York, ECI Alabama, and HM.

3.      According to UCC lien searches performed in the states of incorporation of the Debtors, the following lenders have perfected, valid and enforceable first priority liens on and security interests (collectively, the "Prepetition Liens") in all of the Debtors' assets, including, among other things, their cash and accounts receivables (collectively, the "Prepetition Collateral"): Brahma Finance (BVI) Limited (as to all Debtors), Richard E. Delater (as to all Debtors except HM), and Pacific Aerie Holding LLC, as collateral agent for certain secured lenders (all Debtors) (collectively, the "Secured Lenders"). The Prepetition Liens secure the repayment of outstanding obligations owed by the Debtors to the Secured Lenders in an aggregate amount of approximately $_____ as of the Petition Date. Relative priority of the Prepetition Liens among the Senior Lenders is governed by that certain Subordination Agreement dated as of October 19, 2009 among certain Secured Lenders. In addition, Cummings Properties, LLC (as to ECI Massachusetts only) may claim a security interest in the Debtors' cash and receivables.

-2-

4.  As a result of the Prepetition Liens, the Debtors do not have any unencumbered assets with which to operate their businesses, compensate employees or satisfy their overhead obligations. All of the Debtors' cash on hand and amounts generated by the collection of accounts receivable, as well as all proceeds obtained through the disposition of the Prepetition Collateral, constitute cash collateral of the Secured Lenders within the meaning of section 363 of the Bankruptcy Code (the "Cash Collateral"). In order to satisfy their payroll obligations and maintain and operate their properties, the Debtors have requested the Secured Lenders to consent to the limited use of Cash Collateral. The Debtors submit that their use of Cash Collateral as described herein and in accordance with the Preliminary Order (as hereinafter defined) will allow them to preserve the value of their assets for the benefit of the estates and their creditors.

5.  By this motion, the Debtors seek Court authorization to use Cash Collateral, both on a preliminary and final basis, strictly, that is, within a deviation of five percent (5%), in accordance with the budget attached hereto as **EXHIBIT A**, (the "Budget"). More specifically, Debtors' request authority to use Cash Collateral on a preliminary basis for the period from the Petition Date to March 19, 2010, as well as on a final basis for the period covering March 20, 2010 to May 31, 2010. The Secured Lenders are undertaking a review of the Budget and while discussions are ongoing, as of the Petition Date and as of the date of this motion, the Secured Lenders have not consented to the Debtors' use of Cash Collateral as proposed. The Secured Lenders have further informed the Debtors that it is their position that any such use of their Cash Collateral by the Debtors be subject to a budget that they have approved and further subject to the entry of a Preliminary Order in a form acceptable to the Lenders that provides, among other things, that the Secured Lenders are granted adequate protection as required under section 363 of

22606.000/509839.1

the Bankruptcy Code for the diminution in value of the Prepetition Collateral resulting from, among other things, the Debtors' use of Cash Collateral.

6.  To adequately protect the Secured Lenders from the diminution in value of the Prepetition Collateral resulting from, among other things, the Debtors' use of Cash Collateral, the Debtors seek approval of providing the Secured Lenders with, among others as set forth in the proposed Preliminary Order, the following forms of adequate protection:

(a)  Secured Lenders shall be granted (effective as of the Petition Date and without the necessity of the execution by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or otherwise) valid and perfected, security interests in, and liens (the "Adequate Protection Liens") on all of the right, title and interest of the Debtors in, to and under all present and after acquired property of the Debtors of any nature whatsoever including, without limitation, all cash contained in any account of the Debtors, and the proceeds of all causes of action, other than (a) causes of action (and proceeds thereof) arising under sections 544, 545, 547, 548, 550 and 553 (collectively, the "Avoidance Actions") of the Bankruptcy Code (collectively, with the proceeds and products of any and all of the foregoing, the "Postpetition Collateral"). Subject to a carve out for certain statutory fees and professionals retained in the Debtors' bankruptcy case in an amount agreed to by the Seniors Lenders (the "Carve Out Protection Liens"), said Adequate Protection Liens shall be (x) a first priority perfected lien upon all of the Postpetition Collateral that is not otherwise encumbered by a validly perfected, enforceable, non-avoidable security interest or lien on the Petition Date or a valid lien in existence on the Petition Date that is perfected subsequent to such date as permitted by section 546(b) of the Bankruptcy Code, (y) a first priority, senior, priming and perfected lien upon (a) that portion of the Postpetition Collateral that is comprised of the Prepetition Collateral and (b) Postpetition Collateral subject to a lien that is junior to the liens securing the Prepetition Obligations and (z) a second priority, junior perfected lien upon all Postpetition Collateral (other than the portion described in the preceding clause (y)), which is subject to a validly perfected lien as of the Petition Date or a valid lien in existence on the Petition Date that is perfected subsequent to such date as permitted by section 546(b) of the Bankruptcy Code;

(b)  Subject to the Carve Out and the terms of a final order approving use of Cash Collateral, a claim against the Debtors that constitutes expenses of administration under sections 503(b)(1), 507(a) and 507(b) of the Bankruptcy Code (the "507(b) Claims") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code including, without limitation, sections 105, 326, 328, 330, 331 and 726 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in these Chapter 11 Cases (as defined in the Preliminary Order) or, to the extent permitted by

-4-

applicable law, any subsequent proceedings under the Bankruptcy Code provided that the 507(b) Claims shall not be paid with the proceeds of Avoidance Actions. Subject to the Carve Out and the terms of a Final Cash Collateral Order (as defined in the Preliminary Order), no cost or expense of administration under sections 105, 503(b) or 507(b) or otherwise, including those resulting from the conversion of these Chapter 11 Cases pursuant to section 1112 of the Bankruptcy Code, shall be senior to, or pari passu with, the 507(b) Claims of the Secured Lenders arising out of the Adequate Protection Obligations (as defined in the Preliminary Order);

(c)    Debtors shall provide the following reporting to the Secured Lenders (the "Reporting Requirements"): no later than Tuesday of every calendar week, commencing March __, 2010, a rolling __-week cash flow projection of HC and its subsidiaries in the form of the initial __-week cash flow projection that has been mutually agreed upon by the Secured Lenders and the Debtors (each, a "Cash Flow Forecast"). The Secured Lenders shall have reasonable access, upon notice during normal business hours, to the Debtors' business records and premises and to the Prepetition Collateral and the Postpetition Collateral to enable the Secured Lenders to (i) review, appraise, and evaluate the physical condition of the Prepetition Collateral or Postpetition Collateral, (ii) inspect and review the financial records and all other records of the Debtors concerning the operation of the Debtors' businesses, and (iii) evaluate the Debtors' overall financial condition and all other records relating to the operations of the Debtors. The Debtors shall fully cooperate with the Secured Lenders regarding such reviews, valuations, and inspections, and shall make members of their senior management and professionals reasonably available to the Secured Lenders and their professionals and consultants to conduct such reviews, evaluations and inspections, in each case subject to applicable confidentiality and privilege limitations. At their discretion, the Secured Lenders may request, and the Debtors agree to provide, periodic telephonic updates to the Secured Lenders concerning the operations, business affairs and financial condition of the Debtors, in each case subject to applicable confidentiality and privilege limitations.

The Secured Lenders have advised the Debtors that in the event they do consent to the Debtors' use of Cash Collateral, it shall be conditioned upon the approval of a budget acceptable to the Secured Lenders and the adequate protection requested herein, as well as such other protection and terms as set forth in a preliminary order in a form acceptable to the Secured Lenders.

7.    In addition, in consideration of the Debtors' use of the cash collateral of Cummings Properties, LLC and to adequately protect the interests of such creditor in the event that it is determined by this Court that such creditor possesses a valid, duly perfected, non-

avoidable and enforceable pre-petition lien in the Debtors' cash, the Debtors propose to grant to such creditor a replacement lien upon and security interest in the Debtors' assets pursuant to Bankruptcy Code section 361(2) but only to the extent that this Court determines that such creditor possesses a valid, duly perfected, non-avoidable and enforceable pre-petition lien, subject to any competing claims and interests of the Secured Lenders.

8. The Debtors' need for authorization to use Cash Collateral is compelling. Use of Cash Collateral will be strictly in accordance with the Budget as set forth herein and for the purpose of meeting their payroll obligations as well as maintaining, operating, enhancing, preserving and protecting the value and integrity of their properties, all of which inures to the benefit of the estates. The Debtors submit that the entry of the proposed preliminary order authorizing use of Cash Collateral, which is attached hereto as **EXHIBIT B** (the "Preliminary Order"), is in the best interests of their estates. Conversely, prohibition of the use of Cash Collateral would, among others, prematurely terminate the Debtors' efforts to reorganize under the rehabilitative provisions of Chapter 11, cause the Debtors to be unable to pay salaries to their employees and lead to the deterioration of the Debtors' properties.

WHEREFORE, the Debtors request this Court to enter the Preliminary Order authorizing the Debtors to use Cash Collateral strictly in accordance with the Budget attached hereto and as set forth herein, and to grant the Debtors such other and further relief as is just and equitable.

Dated at Hartford, Connecticut this 19th day of February, 2010.

        HC INNOVATIONS, INC.
        ENHANCED CARE INITIATIVES, INC.
        ENHANCED CARE INITIATIVES OF TENNESSEE, INC.
        TEXAS ENHANCED CARE INITIATIVES, INC.
        ENHANCED CARE INITIATIVES OF MASSACHUSETTS, INC.
        ENHANCED CARE INITIATIVES OF NEW YORK, INC.
        ENHANCED CARE INITIATIVES OF ALABAMA, INC
        HM STRATEGIES, INC.

BY:  /s/ Jon P. Newton
      Jon P. Newton, Esq.
      Federal Bar No. ct03376
      Reid and Riege, P.C.
      Their Proposed Attorneys
      One Financial Plaza
      Hartford, CT 06103
      P (860) 278-1150
      F (860) 240-1002
      jnewton@rrlawpc.com